UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| DAVID DEARMOND | CIVIL ACTION |
| VERSUS | No. 17-2222 |
| ALLIANCE ENERGY SERVICES, LLC | SECTION I |

## ORDER & REASONS

Before the Court is a motion for partial summary judgment filed by plaintiff David DeArmond ("DeArmond"), on behalf of himself and all others similarly situated, regarding the ability of defendant Alliance Energy Services, LLC ("Alliance") to rely on certain defenses.  For the following reasons, the motion is denied.

## I.

This Fair Labor Standards Act ("FLSA") case arises from Alliance's failure to pay its employees overtime compensation for attendance at mandatory safety meetings.  Acknowledging that it made "some unintentional payroll errors,"[1] Alliance contacted the United States Department of Labor ("DOL").[2]  The DOL reviewed Alliance's report and opened an administrative proceeding.[3]  The DOL's investigation concluded that Alliance's FLSA violations resulted in underpayment to 85 employees totaling $43,382.38 covering the period from June 16, 2015 to April 27, 2017.[4]  "Under

---

[1] R. Doc. No. 10. ¶ 46.
[2] R. Doc. No. 19-1, at 1 ¶ 5.
[3] *Id.* at ¶ 6
[4] R. Doc. No. 48-4, at 130.

[DOL] supervision, Alliance [then] issued payment, at the overtime rate, to affected current and former employees."[5]

DeArmond estimates that Alliance paid approximately $13,000 to employees participating in the present case, excluding DeArmond himself.[6]   Despite these payments, DeArmond and a number of other Alliance employees continue to pursue this collective action, arguing that they are entitled to additional liquidated damages under the FLSA.

DeArmond now moves for judgment as a matter of law, arguing that Alliance is precluded from asserting the defenses of waiver and good faith.  Alliance opposes the motion in part.

## II.

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines that there is no genuine dispute of material fact.  *See* Fed. R. Civ. P. 56.  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point

---

[5] R. Doc. No. 19-1 ¶ 6.
[6] R. Doc. No. 48-1, at 1.

out the absence of evidence supporting the other party's case.  *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . ., the material may be presented in a form that would not, in itself, be admissible at trial."  *Lee v. Offshore Logistical and Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017) (quotation omitted).

The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue.  *Anderson*, 477 U.S. at 248.  The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor."  *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

**III.**

DeArmond argues that Alliance is precluded from asserting the defenses of waiver and good faith. The Court considers each in turn.

**A.**

At the outset, Alliance concedes that—with one exception—the liquidated damages claims asserted by DeArmond and his fellow plaintiffs have not been waived.[7] Of the 32 plaintiffs currently involved in this case, Alliance contends that only the claims of Ronnie Bates ("Bates") have been waived.[8] The Court confines its analysis accordingly.[9]

The FLSA provides that

> The Secretary [of Labor] is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees . . . and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have . . . to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.

29 U.S.C. § 216(c). "For there to be a valid waiver[,] section 216(c) simply requires (a) that the employee agree to accept the payment which the Secretary determines to

---

[7] R. Doc. No. 51, at 3.
[8] In the Court's view, Alliance's concession is itself a waiver of the waiver defense with respect to all other plaintiffs.
[9] In its reply, DeArmond does not respond to Alliance's arguments regarding Bates' alleged waiver, imprecisely declaring that "[n]ow that Defendant has conceded its waiver defense, the only remaining issue . . . is whether Defendant has met its burden to show subjective and objective good faith compliance with the dictates of the [FLSA] such that it can avoid the imposition of liquidated damages." R. Doc. No. 52-2, at 1.

be due and (b) that there be 'payment in full.'" *Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537, 539 (5th Cir. 1977).

With respect to Section 216's requirement that an employee agree to accept payment, "'agreement' is more than the acceptance of funds, as it must exist 'independent of payment.'" *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1146 (9th Cir. 2007) (quoting *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 305 (7th Cir. 1986)). "Typically an employee manifests assent by signing a receipt (either a standard WH–58 or another form authorized by the DOL), which puts the employee on notice of the resulting waiver." *Id.* at 1147. But, in any case, "[t]o constitute a waiver, the employee's choice to waive his or her right to file private claims—that is, the employee's agreement to accept a settlement payment—must be informed and meaningful." *Woods v. RHA/Tennessee Grp. Homes, Inc.*, 803 F. Supp. 2d 789, 800 (M.D. Tenn. 2011).

Alliance does not argue that Bates signed any kind of receipt or form authorized by the DOL. Rather, it indicates that Bates had his attorney contact counsel for Alliance to inquire as to the details of the payment Bates received.[10] This inquiry, Alliance maintains, demonstrates that Bates was "fully informed of the nature of the overtime payment before he accepted it via legal counsel."[11] Alliance insists that Bates received payment and provided a knowledgeable acceptance of that payment, thereby waiving any further claims he may have had.

---

[10] R. Doc. No. 51, at 3–4.
[11] *Id.* at 4.

Whether discussions between counsel for an employer and counsel for an employee can serve as the basis for a valid waiver under Section 216 is a question the Court need not pass upon here. In any event, the record does not sufficiently demonstrate that Bates made an informed and meaningful decision to waive his rights against Alliance. The only support Alliance offers for its argument is an affidavit from counsel, which states,

> I received a call as counsel for [Alliance] from Mr. Bates' lawyer in an environmental whistleblower case, Mr. Cayce Peterson, of the Lambert Firm. Mr. Peterson inquired on behalf of Mr. Bates about the nature of the payment and I explained the basis for the overtime payment and directed him to the above-captioned pending lawsuit. I do not know if Mr. Bates had enrolled as an additional plaintiff or not at that time but I did inform his then lawyer as to the nature of the payment prior to his cashing the check.[12]

The Court does not doubt that Alliance's counsel spoke with Bates' counsel, but even assuming such a conversation occurred, the affidavit of Alliance's counsel has little, if any, bearing on Bates' alleged waiver of his rights. All the affidavit says is that Alliance's counsel explained to Bates' counsel the basis for the overtime payment Bates received, informed him as to the nature of the payment, and directed him to the present lawsuit. It does not state that Alliance's counsel informed Bates' counsel that acceptance of the payment would be treated as a waiver of Bates' rights against Alliance, nor does it state that Bates' counsel actually informed Bates regarding the issue of waiver or secured his agreement to waive his rights against Alliance. In effect, all the affidavit does is memorialize a discussion between two lawyers.

---

[12] R. Doc. 51-2 ¶ 3.

In short, there is nothing in the affidavit or anything else in the record at this time that definitively establishes Bates' intent to release Alliance from any claims he may have had against it.  *See Victoria v. Alex Car, Inc.*, No. 11-cv-2904, 2012 WL 1068759, *4 (N.D. Ill.  March 29, 2012) ("[T]he relevant inquiry in a FLSA waiver situation is whether the plaintiffs intended to settle their claims.").  The Court concludes that Alliance has, at the very least, identified a genuine dispute of material fact—namely, whether Bates was fully informed of the nature of the overtime payment and knowingly released his other claims against Alliance.  Summary judgment with respect to Bates' potential waiver is, therefore, inappropriate.

**B.**

DeArmond next argues that Alliance cannot avoid paying liquidated damages by relying on a good faith defense.

Employers who violate the FLSA are generally liable for the amount of unpaid compensation, plus "an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  "In other words, if an employee proves that his employer violated the FLSA, the liquidated damages award is 'automatic.'"  *Monroe Firefighters Ass'n v. City of Monroe*, No. 06-cv-1092, 2009 WL 916272, at *8 (W.D. La. March 31, 2009) (James, J.) (quoting *Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 267 (5th Cir. 1998)).  However,

> if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], as amended, the court may, in its sound discretion, award no liquidated damages.

7

29 U.S.C. § 260.  Thus, where an FLSA violation is found, the Court has considerable leeway in deciding whether to reduce the amount of liquidated damages or to award none at all.  *Cf. Bernard*, 154 F.3d at 267 ("Even if IBP acted in good faith based upon a reasonable belief that it did not violate the FLSA, the district court still had discretion to award liquidated damages.").  "The district court's discretion to reduce the liquidated damages 'must be exercised consistently with the strong presumption under the statute in favor of doubling.'"  *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 929 (5th Cir. 1999) (quoting *Shea v. Galaxie Lumber & Constr. Co.,* 152 F.3d 729, 733 (7th Cir.1998) (discussing the FLSA's liquidated damages provision)).  Under Fifth Circuit precedent, "[a]n employer found liable under [the FLSA] has the '*substantial* burden' of proving to the satisfaction of the trial court that its acts giving rise to the suit are *both* in good faith *and* reasonable."  *Owens v. Marstek, LLC*, 548 Fed. App'x 966, 972 (5th Cir. 2013) (quoting *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990)) (first emphasis added).

"Establishing good faith is a subjective inquiry."  *Abbey v. United States*, 106 Fed. Cl. 254, 265 (Ct. Fed. Cl. 2012).  It requires a defendant to show that it "had an honest intention to ascertain what the [FLSA] requires and to act in accordance with it."  *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1566 (11th Cir. 1991).  The reasonableness inquiry, on the other hand, "is an objective one."  *Abbey*, 106 Fed. Cl. At 265.  In this regard, "proof that the law is uncertain, ambiguous[,] or complex may provide reasonable grounds for an employer's belief that he is in conformity with the [FLSA], even though his belief is erroneous."  *Id.* (internal quotations omitted).

"Good faith cannot be based on ignorance, but instead 'requires some duty to investigate potential liability under the FLSA.'" *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 926 (E.D. La. 2009) (Vance, J.) (quoting *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979)). "'Good faith' in this context . . . requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them. That [an employer] did not purposefully violate the provisions of the FLSA is not sufficient to establish that it acted in good faith." *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58 (2nd Cir. 1997) (internal citations omitted). Moreover, good faith is not "demonstrated by the absence of complaints on the part of employees or simple conformity with industry-wide practice." *Id.* Nor can an employer satisfy its good faith burden "solely by suggesting that lower-level employees are responsible for the violations." *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1263 (5th Cir. 1986).

As stated, an employer must also demonstrate that the actions giving rise to the violations were "predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." *Barcellona*, 597 F.2d 464. The employer may show, for example, "that the employer outrightly and candidly engaged in the acts proven to be violations but did so under a mistaken, although reasonable, belief that its acts were in conformity with the law." *Martinez v. Food City, Inc.*, 658 F.2d 369, 376 (5th Cir. 1981).

DeArmond maintains that Alliance "has no evidence to meet this [good faith] burden."[13] He contends, "[Alliance] can offer no explanation why it decided to not pay for safety meetings. It can point to no investigation it conducted on these matters. It can point to no advice of counsel. It can point to no interpretation of the FLSA . . . that would support paying the way it did."[14] He further argues that Alliance has "failed to identify any supervisor who conducted any research and concluded" that the mandatory safety meetings at issue were not compensable.[15]

Alliance counters that the failure to pay for mandatory safety meetings "was not a companywide policy, but a mistake made" in two of its divisions.[16] According to Alliance's general counsel, the supervisors in those divisions "were under the belief that pre-work safety meetings were an exception to pay or overtime requirements and not essential to the work the employees were performing and thus exempt from" compensation calculations.[17] Those supervisors apparently "came from other companies" and "relied on their experiences and what they believed to be industry standard practices for paying pre-work meetings or what they thought was de minimis time."[18] Alliance further argues that the decision of its supervisors to exclude the safety meetings from compensation calculations was made in good faith because the undercompensated employees may or may not be considered seamen,

---

[13] R. Doc. No. 48-1, at 10.

[14] *Id.* at 10–11.

[15] R. Doc. No. 52-2, at 2.

[16] R. Doc. No. 51-3 ¶ 3.

[17] *Id.*

[18] *Id.* ¶ 4.

10

which are exempt from the FLSA.[19]  Notably, Alliance offers little, if any, evidence that anyone at the company took the time to investigate the FLSA's requirements and attempt to put compliance measures in place.

Ultimately, the question of good faith is a matter for the court to decide.  29 U.S.C. § 260; *see, e.g.*, *King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 725 (5th Cir. 2011) (affirming an award of liquidated damages based on the district court's own credibility determinations); *McConnell v. Thomson Newspapers, Inc.*, 802 F. Supp. 1484, 1506 (E.D. Tex. 1992) (noting that defendant may avoid liquidated damages if it "shows the court—not the jury—that the act violating the FLSA was taken in good faith, and that it had reasonable grounds for believing that the act was not a violation of the FLSA").  However, "courts do not need to make a good faith ruling until after the jury has rendered a verdict finding violations." *Lipnicki v. Meritage Homes Corp.*, No. 10-cv-605, 2014 WL 923524, at *12 (S.D. Tex. Feb. 13, 2014).

For its part, the Court remains deeply suspect of Alliance's ability to prove that it acted in good faith when it decided not to compensate its employees for mandatory safety meetings.  This is particularly true considering the strong presumption in favor of liquidated damages and the Fifth Circuit case law describing Alliance's substantial burden in this context.  Nevertheless, given the factually intensive issues involved in establishing good faith and reasonableness, the Court concludes that stripping Alliance of its defense at the summary judgment stage would be imprudent.

---

[19] R. Doc. No. 51, at 8.

Accordingly, DeArmond's motion will be denied.[20]  Alliance may, if it sees fit, argue

the good faith and reasonableness defense in a post-trial motion.

## IV.

For the foregoing reasons,

**IT IS ORDERED** that DeArmond's motion is **DENIED**.

New Orleans, Louisiana, November 29, 2017.

_____

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[20] Given the manner in which the Court disposes of the motion, it need not reach the merits of Alliance's arguments regarding the Portal-to-Portal Act, de minimis time, and the FLSA's seaman exemption at this time.